Nash, J.
 

 The defendants in this case are citizens of, and resident within, the State of New York, and the plaintiffs, under the act of the General Assembly, commenced their action by an attachment. The attachment served was upon Josiah Collins, and he summoned as a garnishee. In his garnishment, he states that Hugh
 
 W..
 
 Collins becoming indebted to the defendants in this action, conveyed to him and another person all of his property in trust to pay this debt, together with others — that, after paying the other debts mentioned in the trust, from the proceeds of the property so conveyed, there remained in his hands the sum of $798, liable to the claim of the defendants, which sum was insufficient for its discharge. The garnishment then submits the question to the court, whether the money in his hands is liable to
 
 *490
 
 the process of attachment. His Hostor, who
 
 tried the cause,
 
 being opinion that it was, gave judgment against the garnishee, condemning the money in his hands to the nseof the from which judgment the garnishee appealed to this court. We think the opinion is erroneous, and that the money in the hands of Mr. Collins is not liable to the plaintiff’s claim, in the way in which he seeks to subject it.
 

 The language of the attachment law, in describing the interests of a debtor liable to its operation, is very comprehensive. It authorises the issuing the process “ against the estate of the debtor wherever the same may be found, or in the hands of any person or persons indebted to or having any of the effects of the defendants.” Rev. Stat. ch. 6, sec. 1. In pointing out the oath of a garnishee, it directs, that he shall upon oath state “what he is indebted to the defendant, and what effects of the defendant he hath or had in his hands at the time of serving the attachment,” sec. 6. It then sets forth the judgment to be pronounced by the court against the garnishee when, from his garnishment, any judgment can be pronounced against him. “ It shall be lawful, upon his appearance and examination, to enter up
 
 judgment
 
 and award execution against any such garnishee, for all sums of money due to the defendant from him, and for all effects and estateof any kind belonging to the defendant in his possession or custody.” This language, upon its face, is comprehensive enough to embrace every species of property, which the garnishee may have in his possession or custody, belonging to tbe defendant in the action, and all moneys, which he may owe him, regardless of the character in which he may hold the one or owe the other. In the construction of statutes, it has become an established maxim,
 
 qui hasret in litera Insret in covtice,
 
 and the courts, in carrying this statute into execution, found it necessary to depart from its letter. This was necessary in order to give efficacy to the Legislative will, which consists more in the substance of their enactment than in the mere words in which it is clothed, and, also, to preserve tbe symmetry of the Law. The
 
 *491
 
 first decision on this branch of the act, of which we have any report, is that of
 
 Alston
 
 &
 
 Co.
 
 v
 
 Clay,
 
 in 2 Hay. 172. The Court then decided, that money paid into the hands of a clerk on an execution, was not the subject of an attachment against the plaintiff in the execution.
 

 His Honor, Judge Taylojb, in delivering the opinion of the Court, said, “ It has been several times decided, that money in the hands of a Sheriff cannot be attached. Those decisions are analogous to the present. They were made on the ground, that judgments of Courts of justice should be effectual.” The same principle was decided in the case of
 
 Overton
 
 v
 
 Hill,
 
 1 Mur. 47; and in the late case of
 
 Hunt
 
 v
 
 Stephens,
 
 3 Ire. 365. In the first case cited, that of
 
 Alston & Co.
 
 v
 
 Clay,
 
 the Court considered it as settled law, at that time, that money in the hands of a Sheriff, received by virtue of his office, cannot be attached. And in the case of
 
 Orr
 
 v
 
 McBryde, 2
 
 Car. L. Repository, 257, they affirm the doctrine, “ because, say the Court, it would interfere with the rights of others, embarrass, and sometimes render ineffectual the process of the Court, and produce endless litigation.” In this latter case, however, they decide that
 
 “
 
 a
 
 surplus
 
 of money remaining in his hands is liable to attachment, because it is not in his hands,
 
 virtute officii.
 
 The precept commanded him to raise a particular sum, and return that to Court; all over that amount, whether taken from the defendant in the execution or received on the sale of property, belongs to the defendant, and is held by the Sheriff for his use, and might have been immediately demanded of him and its payment enforced, and consequently any creditor of the defendant entitled to the benefit of the attachment law, might subject it to his claim. In the case of
 
 Elliot
 
 v
 
 Newby, 2
 
 Hawk. 22, it was held by the Court, that the interest, which the next of kin had in negroes, in the hands of the administrator, was not liable, under the attachment law, to the claims of a creditor. The reason assigned is, because a court of law is incompetent to take an account of the assets, to order a payment on terms, to have all the parties interested in the fund
 
 *492
 
 before the Court, for the safety of the
 
 administrator. The
 
 ^me f^e 9ues^on came before the Courts, so far as deeds of trust were affected, was in the case of
 
 Peace
 
 &
 
 Peace
 
 v
 
 Jones
 
 3 Mur. 256. In this case the Court decided, as in
 
 Orr v McBryde,
 
 that a- surplus remaining in the hands of a trustee, after the payment of the debts secured by the deed of trust, was money due to the
 
 cestui que
 
 trust, for which lie could maintain an action of
 
 indebitatus assumpsit,
 
 and was therefore liable under the attachment law to the claim of a creditor of his; and they say further, “It seems to be a better criterion, whether property
 
 be liable to
 
 attachment, to ascertain what would be the rights of the defendant in the attachment against the garnishee, than to enquire whether the property would be liable to execution against the defendant.” The case of
 
 Gillis and
 
 McKay, 4 Dev. 172, is we think, in principle, decisive of this. It decides the general question, that, when a trustee holds slaves to divide among several persons, at different times, the interest of a
 
 cestui que trust
 
 eannot be attached in the hands of the trustee. It became necessary for the Court to decide, whether under the act of the General Assembly subjecting equitable interests to execution, ch. 830, Rev. Code, (Rev. Stat. ch. 45, s. 4,) the case before them came within its operation. They decide that it did not, because the trust was created, not alone for the defendant, but for him and others, whose rights were separate and distinct from his. So here the trust is created not alone for the benefit of the defendants in the attachment, Judah and Block, but for others no way concerned with them. It is not, in the language of the Chief Justice, a pure trust, on which alone the act operated. In the language of the Court in the case of
 
 Elliott and
 
 Newby, the better criterion to decide, whether in such cases, as the present, the property sold by the trustee is subject to attachment, is to enquire what would be the rights of the defendants in the attachment. Apply that rule to this case; could Judah and Block have maintained an action at law to recover the sum now sought .to be recovered by the plaintiffs ia
 
 *493
 
 this action
 
 7
 
 Very clearly they could not; their only redress would have been in a Court of Equity, where all persons interested in the fund would have been before the Court, and the interests of all parties properlyprotected. The garnishment discloses, that the available funds in the hands of the garnishee are not sufficient to liquidate the demands secured by the trust, but that they had to abate pro rata, and that other funds might still come into his hands, belonging to the
 
 cestuis que trust,
 
 from the estate of a grand-father. All these facts present questions, which could be settled properly only in a court of Equity. Nor do we conceive, that it would have made any difference in this case, if the other debts secured by the trust had been fully discharged, and the whole of the money now in the hands of the garnishee was applicable solely to the debt of Judah and Block. To recover it they would have been compelled to go into a Court of Equity.
 

 From the principles established by the cases which have been reviewed, we are of opinion that the money in the hands of the trustee, Josiah- Collins, was not liable to the attachment of the plaintiffs, and that the interlocutory judgment in this case is erroneous.
 

 Per Curiam, Ordered to be certified accordingly.